STATE OF WEST VIRGINIA

*v.*

RICHARD BASHAM

(No. 13558)

Decided March 16, 1976.

*John A. Amick* for plaintiff in error.

*Chauncey H. Browning*, Attorney General, *Betty L. Caplan*, Assistant Attorney General, for defendant in error.

BERRY, CHIEF JUSTICE:

The appellant, Richard Basham, is before this Court on appeal from a judgment of the Circuit Court of

Fayette County entered on a verdict of the jury on December 4, 1974, finding him guilty of petit larceny.

In November, 1973, three young men broke and entered a company store of the Semet Solvay Division of Allied Chemical Corporation in Harewood, West Virginia, and removed, among other things, two chain saws and a stereo tape player having an aggregate retail value of $499.00. A day or two after the breaking and entering, the perpetrators approached the appellant in the late hours of the evening at his home which was adjacent to his place of business. Basham was then the owner and operator of a junk yard in Oak Hill, West Virginia where he bought and sold scrap, salvage and similar materials.

At the request of the youths, the appellant purchased the two chain saws and the tape player for $137.00. By his own admission, the appellant knew that the goods transferred were stolen, having been so advised by one of the young men. When Basham purchased the chain saws and stereo tape player, he required one of the youths to give his name and address and to sign a receipt for the goods. In addition, he recorded the make, model and color of the automobile in which the youths were traveling, along with its license number.

The appellant made no report to law enforcement officers of his purchase of the stolen goods. At some point after the transaction, the perpetrators of the breaking and entering were apprehended by members of the West Virginia State Police. As a result of the apprehension, police officers ascertained that a part of the stolen goods had been sold to the appellant. Acting on this information, on January 5, 1974, state troopers purportedly obtained a search warrant from a Fayette County justice of the peace and proceeded to the appellant's place of business. Upon arriving at the appellant's junk yard, the officers advised the appellant that they had a warrant to search the premises. At the time, Basham was not advised that he was suspected of committing a crime, nor was he given "Miranda warnings" or advice relative to his rights under the Fourth Amendment. Ba-

sham immediately and voluntarily advised the troopers that a search warrant was not necessary and that if he had stolen goods he would give them to the officers. He then led the troopers to a building on the premises where he had put the chain saws and retrieved the tape player from his home.

The appellant was not arrested immediately on January 5th but an indictment was returned by the Fayette County grand jury on February 5, 1974, charging him with grand larceny.

Upon his plea of not guilty, the appellant was tried before a jury in the Circuit Court of Fayette County. Prior to trial, the appellant moved to suppress the evidence obtained by virtue of the police search. The appellant based his motion on the contention that the articles were illegally obtained inasmuch as he was not advised of his constitutional rights prior to consenting to a search. The motion was denied by the circuit court.

During trial, the appellant relied almost exclusively on the defense of entrapment. To support this defense, the appellant testified that he purchased the stolen goods pursuant to an agreement with Trooper T. C. Monk, a state police officer from Oak Hill, West Virginia. He stated that Trooper Monk had solicited his help in providing information about persons who sought to sell stolen goods in the area. According to the appellant's testimony, he was to purchase property which he knew or believed to be stolen and that he was to record information about the sellers of such goods, including the license number, make, model and color of their automobile as well as a name or signature of the seller or sellers. The appellant further testified that in accordance with a similar understanding he had purchased drugs from persons who offered to sell them to him and had provided information to Trooper Monk which led to the apprehension of persons engaged in the criminal transfer of controlled substances. In addition to the agreement with Trooper Monk, the appellant testified that he had an arrangement with officials of the Chesapeake and Ohio

Railroad concerning the purchase of copper wire stolen from that company; that he provided officers of that company with information necessary for the apprehension of persons who unlawfully took copper wire from its various operations.

According to the appellant's testimony, he was promised that he would not be prosecuted with regard to any activities conducted in accordance with his agreement with Trooper Monk, so long as he gave the trooper the information that he had recorded.

Called as a witness on behalf of the State, Trooper T. C. Monk denied any agreement with the appellant as testified to. Trooper Monk stated that on one occasion he had advised Basham that his record keeping was inadequate and that it would be necessary for him to record more information about persons from whom he had purchased property; that if the appellant had been approached by someone who offered to sell stolen property or property which he believed to be stolen, that he was to call Trooper Monk and advise him of the fact. The trooper testified that the appellant had never provided any information which led to the arrest of persons offering to sell stolen property. To some extent, the trooper corroborated the appellant's statements concerning an agreement to provide information about persons selling drugs. Specifically, the trooper stated that the appellant had acted as an informant in drug related matters and that the appellant had provided information which helped solve one crime.

On cross-examination, the appellant admitted that he had not on his own initiative advised law enforcement officers that he had purchased the chain saws and tape player and that if he had not been asked about the goods he would have used or sold them.

Based on the evidence developed, counsel for the appellant sought to have the court instruct the jury on the defense of entrapment. The court refused the tendered instructions as not being supported by the evidence.

Further, counsel offered instructions relating to the appellant's lack of criminal intent in the transaction. These were also refused by the trial court.

The many assignments of error by the appellant can be consolidated into four general classifications:

1. The trial court erred in allowing the introduction of the stolen property because it was obtained in violation of the appellant's constitutional rights.

2. The trial court erred in refusing to instruct the jury of the defense of entrapment.

3. The trial court erred in refusing to instruct the jury on the issue of intent.

4. The trial court erred in giving and refusing certain other instructions.

I

The first argument advanced by the appellant is that the state police should have given him "Miranda warnings" or analogous Fourth Amendment advice at the time they confronted him at his place of business. Stated more concisely, the appellant contends that he could not make a voluntary and valid consent to a search of his premises without first having been given warnings by the police with regard to his rights and the consequences of his actions. We are not persuaded by this argument. First, it appears from the evidence in this case that there was no actual search made by the police. When the police officers advised the appellant that they had a search warrant, the appellant voluntarily showed the police officers the location of the stolen goods and turned them over to the officers. Assuming *arguendo* that such action may be construed as a technical search, we conclude that there was no constitutional defect in the conduct of the police officers.

It is unequivocally clear that where a person voluntarily and knowledgeably consents to a search of his premises, such a search may be conducted in the ab-

sence of a search warrant. *State v. Thomas,* W. Va., 203 S.E.2d 445 (1974); *State v. Duvernoy,* W. Va., 195 S.E.2d 631 (1973); *State v. Angel,* 154 W. Va. 615, 177 S.E.2d 562 (1970); 68 Am. Jur. 2d *Searches and Seizures,* §46 (1973).

Numerous courts of both federal and state jurisdictions have addressed the question of whether it is essential to advise the accused of his constitutional rights, either by giving the "Miranda warnings" or by giving similar warnings relating to Fourth Amendment rights, before the accused can give a knowing and voluntary consent to a police search. Universally, these courts have held that the giving of such warnings is not an essential prerequisite to obtaining a valid consent. *United States ex rel. Harris v. Hendricks,* 423 F.2d 1096 (3rd Cir. 1970); *United States v. Goosbey,* 419 F.2d 818 (6th Cir. 1970); *United States ex rel. Combs v. LaVallee,* 417 F.2d 523 (2nd Cir. 1969); *United States ex rel. Lundergan v. McMann,* 417 F.2d 519 (2nd Cir. 1969); *United States v. Kunkel,* 417 F.2d 299 (9th Cir. 1969). *See also,* Cook, *Constitutional Rights of the Accused—Pre-Trial Rights* §50 (1972), and the cases cited therein. In *Combs,* the United States Court of Appeals for the Second Circuit stated:

"To fulfill the purpose of the fourth amendment—controlling police conduct—it is unnecessary to adopt a rule that a search is per se invalid unless it is preceeded by warnings as to fourth amendment rights. The courts are competent to determine whether valid consent has been given absent such warnings."

Similarly, in *Goosbey,* after determining a consent to have been voluntary, the United States Circuit Court of Appeals for the Sixth Circuit stated:

"We are not persuaded that *Miranda* or *Escobedo* tell us that, additional to their own commands, consent to a search must be preceeded by specific discussion of the Fourth Amendment."

Recently, the United States Supreme Court has expressly held that a search by consent is not constitutionally infirm merely because the person involved has not been given advice relative to his right to refuse consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 36 L.Ed.2d 854, 93 S.Ct. 2041 (1973). In reaching this conclusion, the Supreme Court reasoned that there is a clear distinction between the constitutional protections such as those embodied in the Fifth and Sixth Amendments which guarantee a fair trial for a criminal defendant, as compared to those embodied in the Fourth Amendment which were designed to insure the security of one's privacy against arbitrary intrusions by law enforcement officers. In the former class of protections, an informed waiver is essential to the ascertainment of true facts in criminal proceedings. In the Fourth Amendment context, however, an informed waiver does not in any way relate to or assure the quality and evidentiary value of materials seized.

We conclude that, although the subject's knowledge of a right to refuse to submit to a warrantless search may be a relevant factor in determining the voluntariness of a subsequent consent, warnings relative to such rights are not the *sine qua non* of a valid consent to search. In the present case, there is absolutely no doubt that the defendant's consent was totally voluntary. The simple fact is that the crux of the appellant's defense of entrapment was that he cooperated completely with law enforcement officers at every turn. An integral part of the defendant's cooperative activity was the voluntary delivery of the stolen goods to the police officers who appeared at his place of business on January 5, 1974. Based on these facts, we affirm the trial court's ruling allowing the stolen items to be admitted in evidence below.

## II

The primary defense relied upon by the appellant during the trial of this case was in the nature of entrapment. The trial court refused all instructions offered by

the appellant pertaining to his theory of entrapment. In addition, the court did not permit Basham's counsel to make reference to the matter of entrapment in closing argument. Although the appellant contends that six instructions offered by him, Nos. 14 through 19, related to the defense of entrapment, only two, Nos. 17 and 19, were couched in proper language to present the issue of entrapment. Nos. 14, 15 and 18 were not proper entrapment instructions, although Nos. 15 and 18 related to the question of intent.

By traditional definition, entrapment occurs when police officers induce a person to commit a crime not contemplated by such person, for the mere purpose of prosecuting him. The defense may be asserted where the criminal design originates in the mind of the police rather than in that of the accused. Entrapment as a defense to criminal prosecution was recognized and described in this Court's decision in *State v. Jarvis*, 105 W. Va. 499, 143 S.E. 235 (1928):

> "Entrapment may be defined as the inducement of one to commit a crime not contemplated by him for the mere purpose of instituting criminal prosecution against him. [Citation omitted.] In order for a defendant to successfully invoke this doctrine, it must appear that the criminal intent—'the genesis of the idea'—was conceived by the entrapping person, and that the accused, without prior intention to commit the crime, was inveigled into its commission by the entrapper."

It is perfectly proper for police officers to afford opportunities for the commission of crime without thereby prejudicing the subsequent prosecution of the person who commits the offense. "Artifice and stratagem may be employed to catch those engaged in criminal enterprises." But when the limits of proper crime detection are exceeded and the inspiration for an unlawful scheme originates with police officers themselves who then persuade an otherwise innocent person to commit crime or to participate in its commission, the State is estopped by

public policy from pursuing a prosecution for the conduct so induced by its own agents. *Sorrells v. United States*, 287 U.S. 435, 77 L.Ed. 413, 53 S.Ct. 210 (1932). In *Sherman v. United States*, 356 U.S. 369, 2 L.Ed.2d 848, 78 S.Ct. 819 (1958), the Supreme Court of the United States succinctly circumscribed the limits of the defense of entrapment:

> "Entrapment occurs only when the criminal conduct was 'the product of the *creative* activity' of law-enforcement officials. [Citation omitted.] To determine whether entrapment has been established, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal."

We are of the opinion that the evidence in this case was such as to warrant the giving of instructions on the appellant's defense of entrapment. Basham quite candidly admitted having purchased the property with the knowledge that it was stolen. This he did, according to his testimony, pursuant to an arrangement elicited by an officer of the state police. But for this arrangement, Basham stated that he would not have acted as he did. Although the defendant's description of his alleged agreement with Trooper Monk was at times equivocal and was controverted by Trooper Monk's testimony, the jury, rather than the trial judge, should have been the final arbiter of those factual disputes. Similarly, we find that the court erred in refusing to allow the appellant's counsel to argue the defense to the jury.

### III

Three instructions, Nos. 15, 16 and 18, offered by the appellant, dealt with his intent in buying the stolen property. As was noted, these instructions were refused and the jury was not instructed in any manner relative to intent. The appellant contends that his state of mind or purpose when purchasing the stolen goods should have been considered by the jury in its determination of whether his conduct was such as to constitute a commis-

sion of the offense with which he was charged. Stated in other words, the appellant argues that a wrongful purpose is an essential element to the offense of buying and receiving stolen goods and that he was entitled to have the jury instructed to this effect.

In *State v. McGraw*, 140 W. Va. 547, 85 S.E.2d 849 (1955), this Court, in examining the offense of buying and receiving stolen goods as described in *Code*, 61-3-18, stated:

> "The essential elements of the offense created by the foregoing statute are: (1) The property must have been previously stolen by some person other than the defendant; (2) the accused must have bought or received the property from another person or must have aided in concealing it; (3) he must have known, or had reason to believe, when he bought or received or aided in concealing the property, that it had been stolen; and (4) he must have bought or received or aided in concealing the property *with a dishonest purpose*."
> [Emphasis supplied.]

It appears from this analysis that the intent of the accused is relevant to a determination of his guilt and that a jury must find beyond a reasonable doubt that the accused acted with a "dishonest purpose" before it finds him guilty of the offense.

It is uncontroverted fact that the appellant did not take the initiative and advise police that he had purchased the stolen property. Further, the appellant testified explicitly that if he had not been asked about the goods that he would have kept them for his own use or sold them. Certainly these facts were sufficient to support a jury's finding that the defendant's conduct was pursued with a dishonest purpose. Nevertheless, the court's refusal to allow the jury to make this determination effectively denied the appellant his right to a jury resolution of the issue. Also, inasmuch as the defenses of entrapment and lack of criminal intent are so inextricably interwoven in the circumstances of the present case,

the Court is of the opinion that a definitive treatment of the issues by instruction was obligatory. Thus, we find that it was error for the trial court to categorically refuse to instruct the jury on the element of intent.

## IV

Two instructions tendered by the state and given by the trial court are challenged by the appellant as being irreconcilably in conflict. State's Instruction No. 2 defined the offense of larceny; *i.e.*, the taking of another's property with the intent to permanently deprive the owner thereof. State's Instruction No. 4, defined the offense of buying and receiving stolen goods. Although *Code*, 61-3-18 specifies that one who buys or receives stolen goods "shall be deemed guilty of the larceny thereof," larceny, as described in State's Instruction No. 2, and the offense of receiving stolen goods, as described in State's Instruction No. 4, are separate and distinct offenses. *State v. Koton*, W. Va., 202 S.E.2d 823 (1974); *State v. McGraw, supra*. There was no evidence adduced at the trial which would have supported State's Instruction No. 2 relating to larceny; and this, combined with the fact that the otherwise proper but unharmonious instruction on buying and receiving stolen goods was given, constituted a nominal error. However, inasmuch as it does not appear that the jury was misled by this instruction or that the defendant was prejudiced thereby, we cannot conclude that its giving, under the circumstances, constituted reversible error.

There is no merit to the remaining assignments of error relating to the trial court's refusal to give certain other instructions. Defendant's Instruction Nos. 11 and 12 were withdrawn by the appellant and require no further comment. The other instructions offered by the defendant and refused by the trial court were either repetitious, were improper statements of law or were not warranted by the evidence. *State v. Hamric*, 151 W. Va. 1, 151 S.E.2d 252 (1966); *Morgan v. Price*, 151 W. Va. 158, 150 S.E.2d 897 (1966); *Graham v. Wriston*, 146 W. Va. 484,

120 S.E.2d 713 (1961); *State v. Hayes,* 136 W. Va. 199, 67 S.E.2d 9 (1951).

For the reasons stated herein, the judgment of the Circuit Court of Fayette County is reversed, and the verdict of the jury is set aside, and a new trial is awarded to the defendant.

*Judgment reversed; verdict set aside; new trial awarded to defendant.*