346 S.E.2d 344

**STATE of West Virginia**

v.

**James Edward BARKER, Sr.**

**No. 16616.**

Supreme Court of Appeals of West Virginia.

June 27, 1986.

554

Harry G. Deitzler, Wood County Pros. Atty., Parkersburg, for appellant.

Frank Helvey, Public Legal Services, Charleston, for appellee.

PER CURIAM:

The appellant, James Edward Barker, was charged by indictment with receiving stolen goods. *W.Va.Code,* 61–3–18 [1931].[1] Following a jury trial, he was convicted of grand larceny.[2] Judgment was entered

---

1. *W.Va.Code,* 61–3–18 [1931],. provides:

   If any person buy or receive from another person, or aid in concealing, or transfer to a person other than the owner thereof, any stolen goods or other thing of value, which he knows or has reason to believe has been stolen, he shall be deemed guilty of the larceny thereof, and may be prosecuted although the principal offender be not convicted.

2. In his petition, the appellant contended that an indictment for receiving stolen property cannot support a conviction of· grand larceny, because grand larceny is not a lesser included offense of receiving stolen property. We consider this assignment of error to have been waived since it was neither briefed nor argued. *See State v. Flint,* 171 W.Va. 676, 301 S.E.2d 765,

768 n. 1 (1983); *State v. Fairchild,* 171 W.Va. 137, 298 S.E.2d 110, 123 n. 7 (1982); *State v. Buck,* 170 W.Va. 428, 294 S.E.2d 281, 284 n. 2 (1982); *State v. Church,* 168 W.Va. 408, 284 S.E.2d 897, 899 n. 1 (1981).

However, it should be remembered that receiving stolen property and larceny are separate and distinct offenses. Syllabus point 5 of *State v. Basham,* 159 W.Va. 404, 223 S.E.2d 53 (1976) reads: "While *Code,* 61–3–18 provides that one who unlawfully buys or receives stolen goods shall be deemed guilty of the larceny thereof, the traditional offense of larceny and the offense created by the statute are separate and distinct offenses." *See also State v. McGraw,* 140 W.Va. 547, 551, 85 S.E.2d 849, 852 (1955), and *State v. Koton,* 157 W.Va. 558, 565, 202 S.E.2d 823, 828 (1974).

upon the jury's verdict, and the appellant was sentenced to a term of not less than one nor more than ten years in the West Virginia State Penitentiary.

The appellant assigns as error: (1) communication between the trial judge and the jury, during deliberation, outside the presence of the appellant and his counsel; (2) ineffective assistance of counsel evidenced by the failure to move for the suppression of certain evidence; (3) failure of the trial judge to fully instruct the jury on the elements of the offense charged; and (4) insufficiency of the evidence to sustain the conviction. For the reasons appearing below, we reverse the conviction and remand the case for a new trial.

## I

On the morning of November 4, 1983, James Utt parked his four-wheel-drive pickup truck near the Pocatalico exit of Interstate 77 in Kanawha County and went to work. When he returned that evening the truck was gone. Utt reported to the state police that the truck had been stolen.

One week later, Corporal J. M. Richards, of the West Virginia Department of Public Safety, observed the appellant driving a large dump truck with a dealer's license plate,[3] number DUC 624, heading west on Route 47 in Wood County. The truck was hauling doors and nose clips[4] of two pickup trucks. These vehicle parts projected above the sides of the dump bed. Believing the driver to be in violation of *W. Va. Code*, 17A–6–13(a) [1967], which prohibits the use of Class D and Class D–U/C special plates on work or service vehicles, Richards directed the appellant to pull over. As the truck stopped, a passenger exited from the vehicle and departed. The appellant and Richards disagreed at trial on whether the passenger walked or ran from the scene.

Richards asked the appellant if he had a bill of sale for the truck parts. The appellant testified that he told Richards he did

not have the bills of sale with him. Richards testified that the appellant said he had no bills of sale.

Richards climbed into the dump bed and examined the truck parts. He discovered that the serial numbers had been removed from the doors. Richards then asked the appellant to drive to state police headquarters. The appellant gave consent, in writing, to a search of his home and some buildings on property he owned in Wood County. During a search of the property, police discovered more truck parts. James Utt later identified one of the nose clips being hauled by the appellant and various parts found on appellant's property as belonging to his missing truck. Using authenticated photographs, Utt identified these truck parts at the trial. He also testified that, in his opinion, the truck had a fair market value of $4500 at the time it was stolen.

The appellant admitted purchasing most of the parts, including the front end, doors, and bed, but denied knowing that the parts came from a stolen truck. He also denied any knowledge of how a truck cab, identified by Utt, came to be on his property. The appellant testified that he did not notice that the serial number was missing from the door nor did he examine the truck parts for the presence of a serial number. The appellant further testified that he paid $400 for the nose clip and assorted other parts.

After deliberating for about two hours, the jury informed the bailiff that they were "hopelessly deadlocked." The bailiff found the trial judge presiding over a hearing in an unrelated matter and told him about the jury's problem. The judge, without informing the appellant or counsel, sent a message to the jury to continue deliberating. The jury reached the verdict, finding the appellant guilty of grand larceny, about 45 minutes later.

---

**3.** Dealer special plates are issued pursuant to *W. Va. Code,* 17A–6–10 [1985]. Class D plates are issued by new motor vehicle dealers, and Class D–U/C plates are issued by used motor vehicle dealers.

**4.** Richards testified that the "clips" included the fenders, hood and grill portions of a motor vehicle.

Just before announcing the verdict, the judge informed the appellant and counsel about what transpired during the jury's deliberations. At the request of appellant's counsel, the events surrounding the judge's communication with the jury were placed on the record.

## II

The appellant's first contention is that the communication between the trial judge and the jury constituted reversible error, in that his right of presence and right to effective representation of counsel were violated. It should be noted that appellant's trial counsel did not immediately challenge the propriety of the communication. Rather, he made a record of the events and subsequently attacked the communication in a timely motion for a new trial. *See W. Va. R. Crim. P.* 33.

■ In syllabus point 6 of *State v. Boyd,* 160 W.Va. 234, 233 S.E.2d 710 (1977), this Court held:

The defendant has a right under Article III, Section 14 of the *West Virginia Constitution* to be present at all critical stages in the criminal proceeding; and when he is not, the State is required to prove beyond a reasonable doubt that what transpired in his absence was harmless.

The right of an accused to be present at every stage of a criminal trial is also protected by *W. Va. R. Crim. P.* 43. In *Sisler v. Hawkins,* 158 W.Va. 1034, 1039–40, 217 S.E.2d 60, 64 (1975), we recognized "that due process of law under the Federal Constitution requires that a defendant be accorded the right to be present in person or by counsel at every stage of his trial."

In *State v. Smith,* 156 W.Va. 385, 390, 193 S.E.2d 550, 554 (1972), we said "[t]he passing of writings or notes between the court and jury is not proper." The note referred to in *Smith* was written following receipt of a note from the jury informing the trial judge that the jury could not reach a verdict. The trial judge advised the jury to continue deliberating. Additional circumstances contributing to a prejudicial atmosphere surrounding the jury's delibera-

tions in that case were: (1) a conversation between the bailiff and the jury and (2) the refusal of the trial judge to poll the jury.

■ We believe, in the case now before us, that the conduct of the trial judge in communicating with the jury, in the absence of the appellant and his counsel, was improper. As we said in *State v. Smith, supra,* "the court should have called the jury back into the courtroom and there, in the presence of the defendant, given its further instructions." However, because we are reversing the conviction on the ground of instructional error, it is unnecessary to make any further determination of whether the trial court's conduct was harmless. However, *see Rushen v. Spain,* 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983), where it was held that an *ex parte* communication between the trial judge and the jury may be harmless, even though the constitutional rights to assistance of counsel and presence may be implicated.

## III

■ The appellant next contends that his counsel was ineffective in failing to move to suppress the fruits of the search of his truck. Upon a review of the record, we conclude that the state police did not conduct an illegal search because the truck parts being hauled by the appellant were in "plain view." Therefore, appellant's counsel was not ineffective when he failed to make a suppression motion.

"A warrantless seizure of property in plain view is constitutionally permissible provided three requirements are met: '(1) the police must observe the evidence in plain sight without benefit of a search [without invading one's reasonable expectation of privacy], (2) the police must have a legal right to be where they are when they make the plain sight observation and, (3) the police must have probable cause to believe that the evidence seen constitutes contraband or fruits, instrumentalities or evidence of crime.' Syllabus Point 3, in part, *State v. Stone,* [165] W.Va. [266], 268 S.E.2d 50 (1980)."

Syllabus Point 7, *State v. Moore*, [165] W.Va. [837] 272 S.E.2d 804 (1980).

Syl. pt. 2, *State v. Boswell*, 170 W.Va. 433, 294 S.E.2d 287 (1982). *See also* syl. pt. 6, *State v. Clements*, 175 W.Va. 463, 334 S.E.2d 600 (1985).

The "plain view" test was satisfied here. The nose clips were clearly visible in the bed of appellant's dump truck. Corporal Richards had a legal right to mount the truck bed in order to examine the contents. *Code*, 17A–6–25 [1967] provides in pertinent part:

> (a) The commissioner and all law-enforcement officers of the State, acting at the commissioner's request, are hereby authorized to inspect the place of business, vehicles and pertinent records, documents and papers of any person required to be licensed under the provisions of this article to the extent deemed reasonably necessary to determine compliance with and violations of this article.

The simple observation of a truck bearing a D–U/C dealer special plate and hauling vehicle parts constitutes probable cause to believe that the vehicle parts are evidence of a crime. *See Code*, 17A–6–25(b) [1967] and *Code*, 17A–6–13(a) [1967]. Upon inspecting the contents, Corporal Richards observed that the serial numbers were missing from the doors. He thus had probable cause to believe that the vehicle parts were stolen. *See State v. Hanshaw*, 170 W.Va. 354, 294 S.E.2d 157 (1982). Seizure of these parts was not illegal. Failure to seek suppression, therefore, was not ineffective assistance of counsel.

### IV

The appellant's third assignment of error is that the jury instruction defining the offense of receiving stolen property omitted an essential element of the offense, namely, acting with a dishonest intent or purpose.[5]

> "The essential elements of the offense created by [*W. Va. Code*, 61–3–18 [1931]] are: (1) The property must have been previously stolen by some person other than the defendant; (2) the accused must have bought or received the property from another person or must have aided in concealing it; (3) he must have known, or had reason to believe, when he bought or received or aided in concealing the property, that it had been stolen; and (4) he must have bought or received or aided in concealing the property with a dishonest purpose." *State v. McGraw*, 140 W.Va. 547, 550, 85 S.E.2d 849, 852 (1955).

Syl. pt. 6, *State v. Hall*, 171 W.Va. 212, 298 S.E.2d 246 (1982). *See also State v. Basham*, 159 W.Va. 404, 414, 223 S.E.2d 53, 59 (1976); *Commonwealth v. Hey*, 73 Va. (32 Gratt.) 946, 951 (1879). Having a dishonest purpose, at the time a defendant receives stolen property, is an essential element of the crime with which the appellant was accused. Syllabus point 4 of *State v. Basham, supra* provides:

> In a prosecution under *Code*, 61–3–18, for buying or receiving stolen goods, a jury must find beyond a reasonable doubt that the accused acted with a 'dishonest purpose' before it can find him guilty of the offense, and the accused is entitled to have the jury properly instructed on the question of his intent.

*See also State v. Fowler*, 117 W.Va. 761, 188 S.E. 137 (1936), where we said that in order to constitute the offense of receiving

---

5. State's instruction no. 1 charged, in part:

Before JAMES EDWARD BARKER, SR. can be convicted of receiving stolen property, the State of West Virginia must overcome the presumption that he is innocent and prove to the satisfaction of the jury beyond a reasonable doubt that:
1. the Defendant, JAMES EDWARD BARKER, SR.,
2. in Wood County, West Virginia,
3. on a day in November, 1983,
4. did receive from some person or persons,

5. parts of a 1978 Ford truck, of some value,
6. the property of James Utt,
7. which said parts had been previously taken, stolen and carried away,
8. and that when the said JAMES EDWARD BARKER, SR. received said parts of a 1978 Ford truck,
9. he well knew that said parts had been previously stolen, or,
10. that he had reason to believe said parts had been stolen.

stolen goods, the receiving must be "in bad faith."

The element of dishonest purpose is distinct from the element of knowledge. The distinction is explained by Professors Lafave and Scott, as follows:

It is not enough for guilt that one receives stolen property with knowledge that it is stolen. Otherwise, the policeman who catches a thief in possession of stolen property and who takes the booty from him in order to return it to its owner would be guilty. Some sort of a bad state of mind, in addition to the guilty knowledge, is required. (citations omitted) This is so although this requirement is not generally spelled out in the statute defining the offense of receiving stolen property.

The necessary intent, as in the related crime of larceny, is an intent to deprive the owner of his property. The receiver's purpose is generally, of course, to deprive the owner by benefiting himself. But he is equally guilty though his purpose is to deprive the owner, not by benefiting himself but rather by aiding the thief, as by hiding the stolen property for him. (citations omitted)

*Lafave and Scott Handbook on Criminal Law* § 93 (5th Reprint 1980). Another discussion of the difference between the intent and knowledge elements is found at 76 C.J.S. Receiving Stolen Property § 9:

The mere receipt of stolen goods knowing them to have been stolen is not of itself a crime, (citations omitted) as where the property is received with the intent of restoring it to the owner without reward (citations omitted) or with any other innocent intent (citations omitted); in order to constitute the crime, there must be an absence of intent to restore the property to the owner. (citations omitted)

The record shows that no request was made for an instruction containing the element of "dishonest purpose." Defense counsel objected to the giving of State's Instruction No. 1 on the general grounds that it was contrary to the law and the evidence, that it shifted the burden of proof, and that it "[d]oes not require evidence." The instructional error assigned on appeal was not distinctly articulated by trial counsel, as required by *W.Va. R.Crim.P.* 30.

■ An instruction that defines a crime but omits an essential element of the crime may constitute reversible error. In the syllabus of *State v. Jeffers,* 162 W.Va. 532, 251 S.E.2d 227 (1981), we said: "Where a trial court gives, over objection, an instruction which incompletely states the law, and the defect is not corrected by a later instruction, the giving of such incomplete instruction constitutes reversible error where the omission involves an element of the crime." In *State v. Morrison,* 207 N.C. 804, 178 S.E. 562 (1935) and *State v. Brady,* 237 N.C. 675, 75 S.E.2d 791 (1953), the Supreme Court of North Carolina reversed convictions of receiving stolen property where the trial court failed to instruct the jury on the requisite intent.

Failure to afford a criminal defendant the fundamental right to have the jury instructed on all essential elements of the offense charged has been recognized as plain error. *Screws v. United States,* 325 U.S. 91, 107, 65 S.Ct. 1031, 1038, 89 L.Ed. 1495, 1505–6 (1945); *U.S. v. Hutchinson,* 338 F.2d 991 (4th Cir.1964); *Ramirez v. People,* 682 P.2d 1181 (Colo.1984). Under Rule 30 of the West Virginia Rules of Criminal Procedure, this Court may notice plain error in the giving of an instruction regardless of the failure to make a specific objection. *See State v. Hutchinson,* 176 W.Va. 172, 342 S.E.2d 138 (1986).

■ There was plain and fundamental error in this case because the jury was not completely instructed on the essential elements of the offense. The heart of the appellant's defense was that he had neither guilty knowledge, criminal intent nor dishonest purpose when he bought the truck parts. The conviction must therefore be reversed. The giving of the erroneous instruction makes it unnecessary for us to evaluate the sufficiency of the evidence to support the verdict. *See State v. Hamrick,* 160 W.Va. 673, 675, 236 S.E.2d 247, 248 (1977).

The appellant's conviction of receiving stolen property is reversed, and this case is remanded to the Circuit Court of Wood County for further proceedings consistent with the principles set forth in this opinion.

Reversed and remanded.

BROTHERTON, J., dissents for the reason that the alleged error in the instruction defining the offense was not properly raised before the trial court and did not constitute plain error.