434 S.E.2d 697

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Lisa A. NELSON, Defendant Below, Appellant.**

No. 21273.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 13, 1993.

Decided July 22, 1993.

George B. Morrone III, Kenova, for appellant.

Rodney L. Bean, Asst. Atty. Gen., Charleston, for appellee.

WORKMAN, Chief Justice:

This case is before the Court upon the appeal of Lisa A. Nelson from a September 12, 1991, jury conviction in the Circuit Court of Cabell County for fraudulently secreting a public record in violation of West Virginia Code § 61–5–23 (1992).[1] The Appellant had been convicted on March 21, 1991, in magistrate court of a similar charge applicable only to public officers, found in West Virginia Code § 61–5–22 (1992).[2] The Appellant contends that the trial court committed the following errors: 1) allowed the Appellee to amend the warrant and charge the Appellant with a violation of West Virginia Code § 61–5–23, in that she was clearly exempt from any conviction thereunder because she was the person in lawful charge of the records concealed; 2) denied the Appellant's motion in limine made pursuant to West Virginia Rule of Evidence 403, whereby the Appellant sought to suppress any evidence of her involvement in other wrongdoings or crimes; 3) denied the Appellant's motion to suppress evidence seized during the warrantless second search of her personal desk and her personal copy of a magazine at her place of employment; 4) denied the Appellant's motion to set aside the verdict and enter a judgment of acquittal, or in the alternative, grant the motion for a new

---

1. West Virginia Code § 61–5–23 provides:

If any person, *other than an officer in lawful charge thereof,* steal, fraudulently secrete or destroy, a public record or any part thereof, he shall be guilty of [a] misdemeanor, and, upon conviction, shall be confined in jail not more than one year and be fined not exceeding one thousand dollars. (emphasis added).

2. West Virginia Code § 61–5–22 provides that:

If any clerk of a court, or other public officer, fraudulently make a false entry, or erase, alter or destroy any record in his keeping and belonging to his office, or shall wilfully secrete any such record from any person having the right to inspect the same, he shall be guilty of a misdemeanor, and, upon conviction, shall be confined in jail not more than one year and be fined not exceeding one thousand dollars; and, in addition thereto, he shall forfeit his office and be forever incapable of holding any office of honor, trust or profit in this State.

trial, wherein the Appellant contended that she had established, as a matter of law, that she had been entrapped by law enforcement officers; 5) gave various jury instructions which either incorrectly stated the law or were misleading. Upon review of the briefs of the parties, the record and all other matters submitted before the Court, we find that no error was committed and we affirm the conviction.

In October 1989, the Appellant was employed as a records clerk by the Huntington Police Department (hereinafter referred to as HPD). In September 1990, the Appellant became the subject[3] of a drug investigation being conducted by the Cabell County Sheriff's Department (hereinafter referred to as Sheriff's Department). The Sheriff's Department employed Jeffrey Terry as a confidential informant for the drug investigation. According to Mr. Terry's testimony at trial, he became acquainted with the Appellant prior to being employed as a confidential informant, while he was an inmate at the Cabell County Jail and the Appellant was a correctional officer there.

Mr. Terry testified that in September of 1990 he agreed to wear an electronic monitoring device while accompanying the Appellant to purchase marijuana[4] at the home of Billy and Debbie Depaul. While at the Depaul home, Mr. Terry asked the Appellant if she could check the HPD files for outstanding warrants on Mr. Depaul. Deputy Larry Pinkerman also testified that while monitoring the conversation between the Appellant, Mr. Terry and the Depauls, he heard the Appellant talk about police records, as well as divulge information about an ongoing HPD drug investigation.

Deputy Pinkerman testified at the suppression hearing that because of the Appellant's willingness to discuss information regarding an ongoing HPD investigation and to release warrant information found in HPD files, the Sheriff's Department decided to investigate whether the Appellant would "expunge or purge" HPD records. On October 26, 1990, Mr. Terry was once again employed by the Sheriff's Department to aid in an investigation concerning the Appellant's willingness to conceal information contained in Mr. Terry's police record. Mr. Terry testified that he telephoned[5] the Appellant while she was at work and told her that he had applied for a job at Service Machinery and that someone from there would be coming to the HPD to check his police record for felony convictions. He then asked the Appellant if she would "clean them [the felony convictions] out for me." The Appellant agreed to Mr. Terry's request.

On October 29, 1990, Mr. Terry again telephoned the Appellant to ascertain whether anyone had checked on his police record. The Appellant indicated that no one had checked his records yet. She also assured Mr. Terry that she would not disclose Mr. Terry's entire criminal record to the potential employer.

Later that same day, West Virginia State Trooper Jack W. Ice, working undercover, went into the HPD posing as Mr. Terry's potential employer while wearing an electronic monitoring device. Trooper Ice presented the Appellant with a criminal investigation authorization form for the release of Mr. Terry's criminal record. According to Trooper Ice, the Appellant proceeded to check Mr. Terry's record and then she marked on the form under "Records found" that Mr. Terry had "a felony B & E [Breaking and Entering] in 1983, April."[6] Further, the Appellant told Trooper Ice

---

3. There is no explanation in the record as to why the Appellant became the subject of the drug investigation.

4. It is undisputed that the Appellant purchased marijuana. Moreover, the Appellant pleaded guilty to the charge involving the purchase of marijuana. This conviction is not the subject of this appeal.

5. The various telephone conversations between the Appellant and Mr. Terry were recorded and introduced in evidence at trial.

6. It is undisputed that Mr. Terry's criminal record actually indicated that he had four felony convictions between 1983 and 1987 including daytime burglary, two counts of burglary and grand larceny along with the breaking and entering which was disclosed.

that the felony breaking and entering had either been reduced to a misdemeanor or dropped.

Shortly after Trooper Ice departed, Mr. Terry telephoned the Appellant. The Appellant told Mr. Terry what she had disclosed to the potential employer. She also told Mr. Terry, "Jeff, I got my neck stuck way, way out[,]" and that "I could lose my job over this."

On October 30, 1990, a search warrant[7] was issued for "[i]dentification and criminal record of Jeffrey A. Terry packet number 26349." The search warrant identified the place to be searched as "the Huntington Police Department Service Records Division located at 330 3rd. Avenue, Huntington, Cabell County, West Virginia[.] A two ... story building with red brick [f]ront[.]" The Sheriff's Department executed the warrant, conducting a search of the Appellant's desk at the HPD, but failed to find any incriminating evidence.

According to Lieutenant Bobby Stephens, a police officer with the HPD and the Appellant's supervisor, approximately one and one-half hours after the Sheriff's Department conducted the initial search of the Appellant's desk, he went to the Appellant's desk "to separate some of her personal effects from the property of the Police Department." The Lieutenant testified that this occurred subsequent to the Appellant's arrest, but prior to her termination from employment. During this inventory

of the Appellant's personal effects, Lieutenant Stephens noticed a magazine laying in an upright file on top of the Appellant's desk. Protruding from the magazine were papers that the officer recognized as criminal rap sheets belonging to Mr. Terry.[8] These papers should have been in Mr. Terry's criminal history file. These documents were the same documents that were the subject of the earlier search conducted by the Sheriff's Department. Lieutenant Stephens testified that he notified the Sheriff's Department regarding the documents and turned those documents over to that department.

The Appellant presented no evidence at trial and relied upon the defense of entrapment.

## I.

■ The first assignment of error raised by the Appellant is that the trial court erred in permitting the Appellee to amend the warrant and charge the Appellant with violating West Virginia Code § 61–5–23 instead of West Virginia Code § 61–5–22. The Appellant argues that she was clearly exempt from any conviction under West Virginia Code § 61–5–23 since she was the person in lawful charge of the records concealed.[9] Further, the Appellant asserts that if this Court finds that she violated West Virginia Code § 61–5–23, said code provision is unconstitutionally void for vagueness since she had no notice that the

7. According to the testimony of the Appellant's supervisor, Lieutenant Bobby Stephens, an arrest warrant for the Appellant had already been issued and executed prior to the arrival of the Sheriff's Department to execute the search warrant.

8. According to Lieutenant Stephens' testimony, the following records regarding Mr. Terry were discovered within the Appellant's magazine: the criminal history; the criminal jacket file; the booking and fingerprinting sheet; the personal description and family history; and the arrest-booking report. All the records were introduced in evidence at trial.

9. It is important to note that while the Appellant initially objected to the amendment from West Virginia Code § 61–5–22 to West Virginia Code § 61–5–23, the Appellant's counsel subsequently withdrew the objection stating:

I think given the fact that the Court or the Prosecutor could certainly recharge Ms. Nelson [the Appellant] under the separate statute by either filing a new warrant or by filing an Information and ... we don't feel after discussing it and looking at the statute there are any additional elements that need to be proven that would require additional preparation, we would not object at this time to the amendment.

Thus, the Appellant agreed that the Appellant could be properly charged pursuant to West Virginia Code § 61–5–23. Further, the Appellant did not argue that she was exempt from that statute before the trial court. This Court could have determined that the Appellant did not properly preserve this error at the trial court level and therefore, may have viewed this objection as having been it waived. *See* W.Va. R.Evid. 103(a)(1). It is only because this issue may arise in future cases that we address it.

nondisclosure of a criminal history summary to a potential employer would violate the statute.[10] The Appellee maintains that the Appellant was properly convicted pursuant to West Virginia Code § 61–5–23 because the Appellant was not an "officer in lawful charge" of the HPD's records, but was instead a civilian employee of the HPD records division. *See* W.Va.Code § 61–5–23.

■ It is helpful to examine the relevant statutory provision involved. West Virginia Code § 61–5–23 provides, in pertinent part, that "[i]f any person, *other than an officer in lawful charge thereof,* steal, fraudulently secrete or destroy, a public record or any part thereof, he shall be guilty of [a] misdemeanor...." (emphasis added). Thus, the question to be resolved is whether the Appellant was a public officer in lawful charge of the HPD records.[11] In syllabus point 5 of *State ex rel. Carson v. Wood,* 154 W.Va. 397, 175 S.E.2d 482 (1970), we established the following criteria to be used in determining whether a position is a public office or mere employment:

whether the position was created by law; whether the position was designated an office; whether the qualifications of the appointee have been prescribed; whether the duties, tenure, salary, bond and oath have been prescribed or required; and whether the one occupying the position has been constituted a representative of the sovereign.

■ According to the evidence at trial, the Appellant was employed by the HPD as a records clerk and her job responsibilities included handling requests made by the public and dealing with public records. This position was not created by either the Legislature or the Huntington City Council.

*See* W.Va.Code § 8–14–1 to –23 (1990 & Supp.1992); Huntington Municipal Code § 141.01 to –.17 (1990). The Appellant was a subordinate who was supervised by a lieutenant within the HPD, and there is no indication that her job duties were prescribed or required by law nor is there any concomitant law which prescribes or requires tenure, salary, bond or an oath.

This analysis leads to the conclusion that the Appellant was not a public officer. A position of mere public employment which requires providing service to the public and dealing with public records is not equivalent to "an officer in lawful charge" of public records for the purposes of West Virginia Code § 61–5–23. Consequently, the Appellant was properly charged and tried pursuant to West Virginia Code § 61–5–23.

## II.

The Appellant's next assignment of error concerns whether the trial court erred in permitting the State to introduce in evidence the Appellant's involvement in other crimes or wrongdoings. The Appellant asserts that her constitutional right to a fair trial was denied when the State was permitted to introduce evidence of a drug transaction which occurred between the Depauls and the Appellant and the Appellant's agreement to ascertain if any outstanding warrants existed for Mr. Depaul. The State maintains that the admission of this evidence was proper because it furnished part of the context of the crime for which the Appellant was being tried; it was necessary for a full presentation of the State's case; and it was necessary to counter the Appellant's entrapment defense.[12]

---

10. We summarily dismiss the Appellant's alternative argument that West Virginia Code § 61–5–23 is unconstitutionally vague. The statute is clearly "'set out with sufficient definiteness to give a person of ordinary intelligence fair notice that his contemplated conduct is prohibited by the statute.'" *State v. DeBerry,* 185 W.Va. 512, 516, 408 S.E.2d 91, 95, *cert. denied,* —— U.S. ——, 112 S.Ct. 592, 116 L.Ed.2d 616 (1991) (quoting Syl. Pt. 1, in part, *State v. Flinn,* 158 W.Va. 111, 208 S.E.2d 538 (1974)).

11. If the Appellant was a public officer in lawful charge of public records, she should have been charged pursuant to West Virginia Code § 61–5–22. *See supra* note 2.

12. In the syllabus of *State v. Hinkle,* 169 W.Va. 271, 286 S.E.2d 699 (1982), this Court held that "[w]hen a defendant presents evidence of police conduct amounting to entrapment, and the State fails to rebut that evidence or prove defendant's predisposition to commit the crime charged, a trial judge should direct a verdict for

West Virginia Rule of Evidence 404(b) provides:

> *Other Crimes, Wrongs, or Acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

*Accord* Syl. Pt. 2, *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

Additionally, in *Edward Charles L.* we stated that West Virginia Rule of Evidence 404(b) was an " 'inclusive rule' in which all relevant evidence involving other crimes or acts is admitted at trial unless the sole purpose for the admission is to show criminal disposition." *Id.* at 647, 398 S.E.2d at 129 (citing *United States v. Masters*, 622 F.2d 83, 86 (4th Cir. (1980)). This Court relied upon the *Masters* decision in adding to that inclusive list evidence of other crimes, wrongs, or acts which " ' "furnishes part of the context of the crime" or is necessary to a "full presentation" of the case, [or is] ... "part of the res gestae of the crime charged." ' " *Edward Charles L.*, 183 W.Va. at 648, 398 S.E.2d at 130 (quoting *Masters*, 622 F.2d at 86); *see State v. Gilbert*, 184 W.Va. 140, 146–47, 399 S.E.2d 851, 858 (1990).

█ A review of the record indicates that the introduction of evidence of the Appellant's involvement in the drug transaction and her subsequent agreement to check into outstanding warrants on Mr. Depaul, along with her willingness to release information concerning an ongoing HPD drug investigation were necessary to a full presentation of the State's case to the jury. The record reveals that the State did not introduce this evidence to show that the Appellant had a bad character and was acting in conformity therewith, but rather to show how the police made a determination to target the Appellant for the investigation surrounding the concealment of the HPD records and also to counter the Appellant's entrapment defense by demonstrating the Appellant's predisposition to commit the crime charged. *See* W.Va.R.Evid. 404(b).

Finally, the record is clear that, prior to introducing the evidence in dispute, the trial court conducted the proper in camera hearing established by this Court in syllabus point 3 of *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986), *overruled in part on other grounds, Edward Charles L.*, 183 W.Va. at 643, 398 S.E.2d at 125. The trial court also gave an extensive cautionary instruction to the jury which limited its consideration of the collateral acts and crimes. *See* 176 W.Va. at 690, 347 S.E.2d at 210, Syl. Pt. 9.

Therefore, we conclude that no error was committed by the trial court in allowing the State to introduce the evidence of the Appellant's collateral acts and crimes.

### III.

The next issue centers on the inventory the Appellee made on her desk, and the removal of the arrest record from her personal property (the magazine). The Appellant maintains that since this second search [13] was of the Appellant's personal property and was without a warrant, it was unconstitutional. Further, the Appellant asserts that no exceptions to the warrant requirement, such as the plain view doctrine, existed at the time of a search. The Appellee, however, argues that: 1) Lieutenant Stephens' gathering of the Appellant's personal belongings from her desk did not constitute a search; 2) the Appellant had no privacy interest in the surface of her desk; and 3) even if Lieutenant Stephens has seized the HPD records from the Appellant's desk during a search, the seizure

---

defendant as a matter of law." The introduction of this evidence by the State certainly tended to prove the "defendant's predisposition to commit the crime charged." *Id.*

**13.** Although the Appellant uses the word "search" with all its constitutional implications, we note that the testimony reflected that the inventory was not done in aid of further execution of the earlier search.

would have been permissible under the plain view doctrine.

The Appellant relies heavily upon the decision reached in *United States v. Blok*, 188 F.2d 1019 (D.C.Cir.1951) for the proposition that this type of warrantless search of the Appellant's desk was unconstitutional. In *Blok*, the defendant was arrested for petty larceny. The police conducted a warrantless search of the Defendant's desk assigned to her use in the government office where she worked. The desk was first searched without the defendant being present and was again searched in her presence. *Id.* at 1019. The police found incriminating evidence in the desk which was used to convict the defendant. *Id.* at 1020. The defendant disclaimed ownership of the evidence found. *Id.*

The *Blok* court found that the search of the defendant's desk was unreasonable due to the "appellee's exclusive right to use the desk assigned to her." *Id.* at 1021. But the *Blok* court also stated that "[h]er [the defendant's] official superiors might reasonably have searched the desk for official property needed for official use." [14] *Id.*

■ We find the Appellants' reliance on *Blok* as being dispositive of the issue to be misplaced. In this case, the Appellant's private property was not the subject of the inventory, nor did the Appellant have any reasonable expectation of privacy in the criminal record, which is after all a public record. Thus, there was actually no necessity for the investigatory officers to obtain a search warrant for the public document and the Appellant does not have standing to challenge the search, much less an inventory. *See People v. Duvall*, 170 Mich. App. 701, 428 N.W.2d 746, *appeal denied*, 431 Mich. 888, 447 N.W.2d 152 (1988) (upholding warrantless seizure of public documents from deputy sheriff's desk during unannounced investigation into deputy sheriff's processing of bond money because

deputy sheriff lacked reasonable expectation of privacy in government property seized); *see also Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) (stating that one must have legitimate expectation of privacy in object of search in order to object to search); *State v. Tadder*, 173 W.Va. 187, 313 S.E.2d 667 (1984) (upholding warrantless search of vehicle where defendant, as a passenger, had no property or possessory interest in items searched and seized and did not suffer any invasion of a legitimate expectation of privacy).

■ Moreover, in syllabus point 3 of *State v. Julius*, 185 W.Va. 422, 408 S.E.2d 1 (1991), this Court held that:

The essential predicates of a plain view warrantless seizure are (1) that the officer did not violate the Fourth Amendment in arriving at the place from which the incriminating evidence could be viewed; (2) that the item was in plain view and its incriminating character was also immediately apparent; and (3) that not only was the officer lawfully located in a place from which the object could be plainly seen, but the officer also had a lawful right of access to the object itself.

Obviously, when the Lieutenant saw the criminal rap sheet sticking out of the magazine which was clearly laying in an upright file on top of the Appellant's desk, his seizure of that rap sheet comported with the criteria for a plain view warrantless seizure as set forth by this Court in *Julius*. *See id.* at 424, 408 S.E.2d at 3.

Thus, we find that the Appellant's supervisor's discovery of the magazine containing official HPD records was constitutional, even had the matter seized not been a public record. Accordingly we affirm the trial court's denial of the Appellant's motion to suppress the incriminating evidence discovered.

---

**14.** In *O'Connor v. Ortega*, 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987), the United States Supreme Court held that a public employer may conduct a work-related search, which is not criminal in nature, of a public employee's office, desk and file cabinets, as long as the search is "for noninvestigatory, work-related purposes, as well as for investigations of work-related misconduct," and the search satisfies "the standard of reasonableness under all the circumstances." *Id.* at 725–26, 107 S.Ct. at 1502.

## IV.

The Appellant argues that the trial court should have concluded that entrapment existed as a matter of law and granted her motion to set aside the verdict and enter judgment of acquittal, or in the alternative, granted a motion for a new trial. The Appellee maintains that the evidence at trial did not support a finding by the trial court that entrapment as a matter of law was established.

This Court held in syllabus point 4 of *State v. Knight*, 159 W.Va. 924, 230 S.E.2d 732 (1976) that:

A trial court may find, as a matter of law, that a defendant was entrapped, if the evidence establishes, to such an extent that the minds of reasonable men could not differ, that the officer or agent conceived the plan and procured or directed its execution in such an unconscionable way that he could only be said to have created a crime for the purpose of making an arrest and obtaining a conviction.

However, in the syllabus of *State v. Hinkle*, 169 W.Va. 271, 286 S.E.2d 699 (1982), we held that a trial court should conclude that the defendant was entrapped and direct a verdict for the defendant as a matter of law "[w]hen a defendant presents evidence of police conduct amounting to entrapment, and the State fails to rebut that evidence or prove defendant's predisposition to commit the crime charged...."

The evidence in this case simply does not meet the criteria set forth in the *Knight* decision for finding entrapment as a matter of law. 159 W.Va. at 925, 230 S.E.2d at 733. On the contrary, the evidence indicates that the Appellant was originally the target of a drug investigation. During that investigation the Appellant indicated her willingness to check outstanding warrants for a drug dealer, and to reveal information regarding an ongoing drug investigation to which she was privy as a result of her HPD employment. While the record reflects her willingness to check for outstanding warrants was initially prompted by the confidential informant,

it is also clear that the Sheriff's Department did not "conceive[ ] the plan and procure[ ] or direct[ ] its execution in such an unconscionable way that ... [the officers] could only be said to have created a crime for the purpose of making an arrest and obtaining a conviction...." 159 W.Va. at 932, 230 S.E.2d at 737. Thus, reasonable minds could have differed as to whether the law enforcement officer's conduct constituted entrapment as a matter of law. *See id.; see also State v. Taylor*, 175 W.Va. 685, 337 S.E.2d 923 (1985). Further, even if the Appellant presented some evidence of entrapment, the evidence reveals that the State certainly rebutted the evidence by proving the Appellant's predisposition to commit the crime charged. *See Hinkle*, 169 W.Va. at 271, 286 S.E.2d at 700, syllabus.

## V.

Finally, the Appellant makes several assignments of error regarding the jury instructions given by the trial court. The first error involves State's instruction number one which was:

The Court instructs the jury that if you believe the defendant, LISA NELSON, while employed by the Huntington Police Department as a civilian employee unlawfully, willfully, fraudulently and with intent, did secrete and remove the criminal history summary from a person authorized and having the right to inspect the same or any part thereof, then you should find the defendant, LISA NELSON, guilty of charges against her.

The Appellant argues that this instruction does not advise the jury that the person who is in lawful charge of the records is exempt from conviction under this particular code section. Based upon our determination on the applicability of West Virginia Code § 61–5–23 to this case, we find this assignment of error to be without merit. Moreover, the Appellant never raised an objection before the trial court to this instruction based upon the error now alleged before this Court. Thus, the Appellant failed to properly preserve this error be-

fore the trial court. *See* W.Va.R.Evid. 103(a)(1); W.Va.R.Crim.P. 30.

The second instructional error concerns State's instruction number two: "The Court instructs the jury that a criminal history summary is a public record as a matter of law." The Appellant argues that the criminal history summary at issue in this case is not a public record but a compilation of public and "non-public" information used by law enforcement agencies. The Appellee asserts that the instruction was in accordance with the law and we agree.

 The term "public record" is defined within the Freedom of Information Act,[15] West Virginia Code § 29B–1–2(4) (1986), as "any writing containing information relating to the conduct of the public's business, prepared, owned and retained by a public body." According to this legislative definition, the nature of a "public record" is not based upon public availability as asserted by the Appellant, but rather it is based upon whether a public body prepares, owns and retains the record. Moreover, the Legislature specifically exempted the public records of law enforcement agencies dealing with "the detection and investigation of crime and the internal records and notations of such law-enforcement agencies which are maintained for internal use in matters relating to law enforcement" from the Freedom of Information Act disclosure requirements. W.Va.Code § 29B–1–4(4) (1986). Such an exemption would be unnecessary if the criminal history summary was not a public record. Thus, the criminal history summary in this case was a public record, and the trial court was correct in giving an instruction to that effect to the jury.

The third instructional error involves State's instruction number three:

The Court instructs the jury that there is nothing improper in the use, by the Sheriff's Department, of decoys, undercover agents and informants, to invite the exposure of willing criminals and to present an opportunity to one willing to commit a crime. If you believe the Sheriff's Department did nothing more than afford an opportunity for the commission of the crime charged against LISA NELSON, entrapment has not occurred.

The Appellant asserts that the above-mentioned instruction cited non-binding law from a neighboring jurisdiction[16] as authoritative, and the instruction was misleading, cumulative, and, essentially directed a verdict in the State's favor. In contrast, the Appellee argues that the trial court's instructions, when read in their entirety, properly stated the law regarding the entrapment defense.

 This Court has previously stated in *State v. Basham,* 159 W.Va. 404, 223 S.E.2d 53 (1976), that "[i]t is perfectly proper for police officers to afford opportunities for the commission of crime without thereby prejudicing the subsequent prosecution of the person who commits the offense." *Id.* at 412, 223 S.E.2d at 58, *accord State v. Maynard,* 170 W.Va. 40, 289 S.E.2d 714 (1982). The instruction given in the instant case was consistent with this previous decision reached by this Court and with general principles of the law on entrapment. Further, the trial court also gave Defendant's instruction number one to the jury which set forth the defense of entrapment and the burden of proof for entrapment. Therefore, we find no error was committed by the trial court.

 Finally, the Appellant argues that the trial court erred in giving an amended Defendant's instruction number two instead of giving the entire instruction which was proposed as follows:

The Court instructs the jury that a law enforcement agent or informant's appeal to sympathy may constitute entrapment where it generates a motive for committing the offense other than ordinary intent. Therefore, if you should find that

---

**15.** *See* W.Va.Code § 29B–1–1 to –7 (1986 & Supp.1992).

**16.** At the conclusion of the instruction, the State cited *McCoy v. Commonwealth,* 9 Va.App. 227, 385 S.E.2d 628 (1989) as supporting authority for the instruction.

Lisa A. Nelson's motive for committing the offense alleged was generated by a law enforcement agent or informant's appeal to her sympathy, then it is your duty to find her not guilty.

The trial court amended the instruction by deleting the entire second sentence. We find no error in such modification. Furthermore, the Appellee contends that the Appellant did not specifically object to this alleged error, thereby waiving it.

Based upon the foregoing, we affirm the decision of the Circuit Court of Cabell County.

Affirmed.