# CHARLESTON.

### STATE v. PETE WEISSENGOFF.

Submitted October 11, 1921.   Decided October 18, 1921.

1. CRIMINAL LAW—*Departure from Usual Order of Introducing Evidence Not Error Unless Discretion is Abused.*

   A departure from the usual order of introduction of evidence, in the trial of a case, does not constitute error, unless it amounts to an abuse of discretion in the trial court.   (p. 281).

2. WITNESSES—*Party Making Opposing Witness His Own While Cross Examining May Indirectly Contradict His Testimony.*

   Although a party making an opposite witness his own, by cross-examination as to matter not testified to in chief, cannot directly impeach him by the testimony of another witness, he may prove, by such other witness, any fact that is admissible as part of his case, notwithstanding conflict in the evidence of the two witnesses, and thus impliedly and indirectly contradict the witness so made his own.   (p. 281).

3. SAME—*Privileged Because Tending to Incriminate Waived by Answering Without Objection.*

   The privilege of a witness to decline to answer a question tending to incriminate him is strictly personal, and is waived and lost, for the purposes of the trial, by his answering it without protest or objection, and, in such case, the trial court may properly overrule a motion to strike out his answer to such question.   (p. 282).

4. CRIMINAL LAW—*Evidence Showing Defendant's Attempt to Obtain Perjured Testimony is Admissible.*

   Testimony tending to prove an attempt on the part of the defendant in a criminal case, to obtain perjured testimony in his behalf, is relevant, material, and, therefore, admissible, even though its probative value is slight.   (p. 282).

5. SAME—*Any Evidence Tending to Prove Defendant's Innocent Intention Admissible.*

Upon a material issue as to the actual *bona fide* intention of a party to a transaction, anything that casts light upon his motive and purposes and tends to prove innocence of intentional wrong doing, is admissible. For such purpose, action under advice of counsel as to matters involving positive law, ignorance of which does not excuse, is admissible. (p. 283).

6. SAME—*Instruction Not Supported by Any Evidence is Error.*

An instruction that includes an hypothesis not supported by any evidence at all cannot properly be given. (p. 284).

7. SAME—*Proof of Merely Technical Flight will not Warrant an Instruction Thereon.*

Proof of a merely technical flight by an accused person, if any at all, attended by circumstances rendering it highly improbable that he actually fled from the scene of the alleged offense, does not appreciably tend to prove flight as an incriminating fact, wherefore an instruction cannot properly be predicated upon it. (p. 284).

8. HOMICIDE—*Testimony on Whether Accused Knew he was Resisting an Officer with a Valid Writ Held to Justify Instruction as to Whether Officer Commanded Him to Stop.*

Upon an issue in a criminal case, as to whether the accused, in resisting an officer, knew he was resisting an attempt of the latter to put him under arrest by virtue of a valid writ then in his possession, testimony to the affect that, before the struggle began, the officer commanded the accused to stop, told him he had a warrant for him, and, at the beginning of the struggle, declared him to be under arrest, justifies inclusion in an instruction, of an inquiry as to whether, in the struggle, the officer commanded him to stop, the attempt to enforce the order being, in law, a repetition thereof. (p. 284).

9. CRIMINAL LAW—*Instruction that Jury May Arbitrarily Believe or Disbelieve any Witness is Error.*

It is reversible error to instruct the jury in a trial, that they may arbitarily believe or disbelieve any witness testifying in the case. (p. 285).

10. SAME—*Accidental Omission of Material Instruction Does Not Excuse Error.*

Inadvertence or accident in the omission to give a proper and material instruction requested does not excuse the error in the failure to give it. (p. 285).

Error to Circuit Court, Grant County.

Pete Weissengoff was convicted of involuntary manslaughter and sentenced to imprisonment in the county jail, and to pay a fine, and he brings error.

*Reversed and remanded.*

*Neely & Lively,* for plaintiff in error.

*E. T. England,* Attorney General, *Chas. Ritchie,* Assistant Attorney General, *Arthur Arnold,* Prosecuting Attorney, and *Harry G. Fisher,* for the State.

POFFENBARGER, JUDGE:

The new trial awarded Peter Weissengoff, by the decision on a former writ of error in this case, reported in 85 W. Va., 271, resulted in his conviction of involuntary manslaughter and imposition of imprisonment in the county jail, with labor on the public roads, and a fine of $2,000.00, by way of punishment. On this writ of error, he complains of the judgment, assigning errors in the judgment itself and predicating several other assignments of error upon rulings made in the trial, respecting admission and exclusion of evidence and the giving and refusal of instructions.

On his cross-examination, certain questions were propounded to him, respecting a matter not referred to, nor brought out, on his examination in chief, and, after he had answered them, a motion to strike out that part of his evidence was overruled. One ground of this motion was lack of right in the State to elicit the information by cross-examination, its admissibility being assumed. This pertains to the mere order or mode of introduction of evidence, a matter largely left in the discretion of the trial court. It is not error to adhere to the rules of practice. On the other hand, the court has discretion to relax them. In the latter case, there is no error, in the absence of an abuse of discretion. *Bond* v. *National Fire Ins. Co.,* 77 W. Va. 736; *State* v. *Littleton,* 77 W. Va. 804; *Pocahontas Collieries Co.* v. *Williams,* 105 Va. 708. We have no decision in which a judgment has been reversed for departure from the rule limiting the cross-examination to the subject matter of the examination in chief.

The questions under consideration related to an alleged conversation between the accused and one Albert Davis, relied upon by the State as suggesting acceptance of money from the accused, by Davis, with which to procure testimony favorable to the former. They were all answered without protest or objection and then a motion was made to strike out the answers.

It may be true that the questions tended to incrimination of the witness, and he was under no duty to answer them. But, if so, in answering them, he waived his constitutional privilege. Right to it is strictly personal and, if not promptly claimed, it is waived and so lost. *Taylor* v. *United State,* 152. Fed. 1; *Morgan* v. *Halberstadt,* 60 Fed. 592; *Eggers* v. *Fox,* 177 Ill. 185; *State* v. *Laudano,* 74. Conn. 638; 40 Cyc. 2552; 28, R. C. L. 428.

Admissibility of Davis' testimony to the conversation, which the court likewise refused to strike out, depends upon whether the alleged fact was relevant and material to the issue. If it was the ruling was correct, even though it may not have been admissible for impeachment of the accused. The State could prove the fact by Davis, in support of its case, notwithstanding the implied contradiction of the accused in doing so, even though it be conceded that the cross-examination made him the State's witness as to the transaction. *Lambert* v. *Armentrout,* 65 W. Va. 375; *Hickory* v. *United States,* 151 U. S. 303.

Admittedly, the accused asked Albert Davis, while the trial was in progress, if he had not heard a certain person who does not seem to have testified, say the sheriff, Donald P. Davis, was drinking or drunk on the occasion of the transaction in which he was killed. Davis testified that he had gone further and said, in that connection, ''Money is no object to me. I want to get out of it.'' This alleged conversation seems to have been regarded as involving solicitation to Davis to obtain perjured testimony for the accused and an offer of money for that purpose. A jury could so interpret it, if they believed the suggestion as to money, which the accused denied. Being susceptible of such interpretation, it was the province of the jury to say what it meant, and it

was admissible, if in any legitimate sense probative. *State* v. *Sheppard,* 49 W. Va. 582, 603. An attempt to prevent a fair trial by corruption of a witness is admissible evidence against the party resorting to it. *Maynard* v. *Bailey,* 85 W. Va. 679. Vagueness of this evidence detracts from its value, but its probative value is not the test of admissibility.

No doubt the court, if requested, would have instructed the jury not to consider Davis' testimony as matter directly contradicting the statement of the accused. A general objection to it did not impose that duty on the court, however.

The liberality of the rule, justifying admission of this evidence, would have admitted the testimony of the accused, tending to prove ignorance on his part, at the time of the attempted arrest, of the sheriff's possession of a capias authorizing it. If permitted, he would have told the jury he had been advised by his attorneys that his case had been continued at the April term of court, until the July term, and, in substance, that he could go about his business until that time. Having direct bearing upon a vital issue in the case, resistance of arrest, resulting in the death of the officer, this evidence was improperly excluded. Neither liability of the accused to arrest, forfeiture of his recognizance, issuance of the capias, the offier's possession thereof, nor its validity was in issue or contradicted by this evidence. It pertained solely to the intention and purpose of the accused, on the occasion of the fatal transaction. Upon an issue as to the actual *bona fide* intention of an actor in any transaction in which such intent is material, anything that directly casts light upon his probable motives is competent for the consideration of the jury. *Blodgett Paper Co.* v. *Farmer,* 41 N. H. 398; *Howey* v. *Stevens,* 58 N. H. 338; *Tobin* v. *Walkinshaw,* Fed. Cas. No. 14070; *Bottomley* v. *United States,* Fed. Cas. 1688. Nothing is better calculated to accomplish such a result under the circumstances here disclosed, than the advice of counsel.

There was no error in the giving of the State's instruction No. 1. In connection with its correct statement of the theory of the prosecution, it included the time-worn rule of presumption of intention as to consequences of a wrongful

act. Properly guarded, as it was here, this rule may always go to the jury in homicide cases, if there is evidence of such acts resulting in death. State v. Taylor, 57 W. Va. 228; State v. Clifford, 59 W. Va. 1.

Instruction No. 4 given for the State should have been refused. It propounds the theory of flight of the accused as an incriminating circumstance. After the tragedy occurred at the West Virginia end of the bridge between Peidmont, W. Va., and Westernport, Md., the accused merely went from that place to his home in Westernport. In the collision, both he and some of his children were hurt. If it can be said there was technical flight in leaving the state, the circumstances were such as fully repelled all inferences of guilt arising from it. All taken together, they do not appreciably tend to prove consciousness of guilt.

An instruction was given over objection of the accused, based upon the alleged conversation between him and the witness Davis, hypothetically submitting the theory of the State as to it, and telling the jury they might consider it as a circumstance with all the other testimony, in passing upon the guilt or innocence of the accused, if they believed Davis. It should have been refused because it embodies an hypothesis not sustained by any evidence at all, namely, an "attempt to influence any witness for the State." The conversation did not relate to Davis' own testimony, nor anything to which he could have testified, and Ravenscroft, the man mentioned was not a witness.

The objection to the giving of the State's instruction No. 7 is untenable. There is evidence that Davis commanded the accused to stop, told him he had a warrant for him, jumped on the running board of the car and said "Pete you are under arrest." This clearly tends to prove the hypotheses submitted by the instruction, which it is argued are unsupported by evidence. All that followed was an attempt to make good the order of submission to arrest.

State's instructions Nos. 8 and 13 were improperly given over objections. In substance, they are the same as instructions disapproved in State v. Ringer, 84 W. Va. 546 and State v. Long, 88 W. Va. 669, 108 S. E. 279, there interpre-

ted as having authorized the jury arbitrarily to believe or disbelieve any witness testifying in the case. In both of those cases, the giving of such an instruction was held to be reversible error. We perceive no reason for departure from them as precedents.

State's instruction No. 15 does not assume knowledge on the part of the accused of the sheriff's possession of the capias, while they were struggling for control of the car. It submits to the jury an inquiry as to previous arrest by virtue of the capias offered in evidence. This could not have occurred with his knowledge of the writ. At any rate, the reference to the writ, in the submission of that inquiry, was sufficient to carry knowledge on the part of the accused, of its possession by the sheriff, to the jury as part of the hypothesis, and the jury could not have been misled by the subsequent phrase, "knowing the sheriff held the capias." For the purposes of another trial, however, it should be made more specifically hypothetical as to knowledge of the writ.

The court erred in its unintentional refusal to give instruction No. 10. requested by the defendant. It is identical with instruction No. 16, refused on the former trial, but approved by this court in our disposition of the former writ of error. That refusal thereof was inadvertent is immaterial. The result is just as detrimental as if it had been intentional.

It is impossible to concur in the view urged here, that the errors herein noted are harmless. The case involves an issue as to whether the fatality was occasioned by the accused or by the action of the deceased himself, and that is a question for jury determination in a trial free from erroneous rulings by the court, in the progress thereof, working prejudice to the accused.

As the judgment will have to be reversed for the errors herein noted, particularly those committed in rulings on instructions, it is unnecessary to enter upon an inquiry as to the extent of the constitutional limitation upon penalties applicable to misdemeanors and not defined by statute. The verdict upon which the present judgment stands will be set aside and then there will be neither a verdict nor a judgment. If there should be another conviction, the judgment

to be rendered upon it may be clearly and concededly valid. For the reasons stated, the judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and remanded.*