383 S.E.2d 79

**STATE of West Virginia**

v.

**Charles F. JACKSON.**

**No. 18254.**

Supreme Court of Appeals of West Virginia.

July 13, 1989.

David M. Finnerin, Parkersburg, for Charles F. Jackson.

Ellen Gay Jarrell, Asst. Atty. Gen., Charleston, for State.

BROTHERTON, Chief Justice;

A jury in Ritchie County convicted the defendant, Charles E. Jackson, on three charges of sexual abuse in the first degree. On appeal he claims, among other things, that the court erred in permitting the prosecution, on rebuttal, to adduce evidence that he had engaged in non-consensual sexual contact with a niece many years prior to trial in an incident totally unrelated to the charges against him. He also argues that the Court erred in allowing an "expert" to "lecture" on sexual abuse and in admitting certain evidence on his desire to care for a foster child. This Court believes

that the admission of evidence relating to the defendant's alleged sexual activity with his niece was reversible error and reverses the convictions on that ground.

The defendant, a gym teacher in an elementary school in Ritchie County, was accused of sexually abusing three of his female students, who were between six and eight years of age. He was specifically charged with placing the girls on his lap and rubbing their private areas.

A trial was held in July, 1986. In the course of that trial the State showed that in 1986 one of the defendant's students informed her father that "Mr. Jackson [the defendant] touches me." The father contacted a number of other parents and learned that the defendant had allegedly been involved with two other children.

The State called as witnesses the three children, who were six, seven, and eight years old. Each child indicated that the defendant had rubbed her between her legs. The State also called as a witness Phyllis Jean Hawthorne, a sexual-abuse therapist at the Summitt Center for Human Development in Clarksburg. Ms. Hawthorne explained the stages of sexual abuse and described the effects of sexual abuse on children between the ages of six and eight. She indicated that she had interviewed each of the girls involved in the defendant's case, and that during the interviews she was looking for evidence of the different stages of sexual abuse. She determined that there was evidence of the various stages, and she stated that, in her opinion, the children had not been coached.

The defendant, to counter the State's case, called a number of witnesses to testify as to his character. Defense counsel specifically asked two of the witnesses whether the defendant had a "moral law abiding character." They responded that he did. The defendant himself testified that he had retired from a military career and decided that he wanted to become an elementary teacher because he had always been involved in children's activities. He categorically denied sexually abusing any of his students, though he did explain that on one occasion a child approached him and sat on his lap and told him that she had a sore throat. He also indicated that on one other occasion the same child had come up to him and given him a hug.

To rebut the defendant's character evidence, the State called Deborah LeMasters, the defendant's twenty-nine-year-old niece, as a witness. From the time she was approximately four years old until she was eight or nine Ms. LeMasters had lived with her grandmother, the defendant's mother. She testified that in this time period the defendant had touched her on her private parts and had caused her to touch him on his penis. She also expressed the opinion that the defendant was neither a moral nor a law abiding person.

On appeal, the defendant claims that the trial court committed reversible error by permitting his twenty-nine-year-old niece to testify about the alleged sexual conduct which had occurred approximately twenty years before. As previously noted, the prosecution introduced this evidence to rebut the defendant's character evidence.

■ In this case, the defendant placed his character in issue by presenting witnesses who testified generally about his moral, law-abiding character. By doing this, he opened the question of his character, and the State properly could adduce evidence to rebut his evidence and to attempt to impeach the witnesses. *See State v. Tanner*, 171 W.Va. 529, 301 S.E.2d 160 (1982); *State v. McKinney*, 161 W.Va. 598, 244 S.E.2d 808 (1978). This is recognized in Rule 404(a)(1) of the West Virginia Rules of Evidence, which permits "[e]vidence of a pertinent trait of his character offered by an accused, or by the prosecutor to rebut the same."

■ There are, however, limitations on the evidence which may be utilized to impeach a defendant's general character evidence on rebuttal. The limitations are set forth in Rule 405(a) of the Rules of Evidence, which provides that in the event "evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion." Evi-

dence of specific acts or rumors of specific acts reflecting on character is not allowed. This follows the widely-recognized view that when general character evidence is adduced, rebuttal character witnesses may testify only as to reputation and to opinion; rebuttal testimony pertaining to specific acts is not allowed. 2 J. Weinstein, *Weinstein's Evidence* ¶ 405[02] at 405–22 (1988). *See* E. Cleary, *McCormick's Handbook of the Law of Evidence*, § 192 at 459 (1972); F. Cleckley, *Handbook on Evidence for West Virginia Lawyers*, § 6.2(d)(4)(b) at 314 and § 6.2(D)(5) at 315 (2d ed.1986); *United States v. Herman*, 589 F.2d 1191 (3d Cir.1978), *cert. denied*, 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979).

This is not to say that specific incident evidence is not admissible on cross-examination. Under Rule 405(a), it is possible to cross-examine the defendant's character witnesses as to relevant specific incidents of a defendant's misconduct. The rule states that "[o]n cross-examination, inquiry is allowable into relevant specific instances of conduct." [1] In the present case, however, the State chose not to challenge the defendant's character evidence on cross-examination, but to assert the challenge on rebuttal.

▪ Because the State chose to challenge the defendant's witnesses on rebuttal, rather than cross-examination, the State was legally limited to adducing reputation or opinion evidence. This Court believes that the trial court erred in admitting the specific incident testimony of the defendant's niece and that the defendant's conviction must be reversed because the court allowed the jury to consider that testimony.

▪ Besides the failure of the trial court to conform to the proper standards relating to the form of evidence used to rebut the defendant's general character evidence, the specific testimony in the present case was improper because it involved incidents too remote from the crimes charged. In an analogous situation, where the State attempted to introduce evidence of other crimes or wrongful acts on the part of a defendant to prove system, motive, intent, or opportunity, as outlined in Rule 405(b), known as the collateral crime rule, "we have emphasized that [to be admissible, evidence of] the collateral crimes must [relate to crimes that] have occurred reasonably close in point of time to the present offense." [2] *State v. Dolin*, 176 W.Va. 688, 694, 347 S.E.2d 208, 214 (1986). *See, e.g., State v. Messer*, 166 W.Va. 806, 277 S.E.2d 634 (1981) (per curiam); Syllabus Point 7, *State v. Withrow*, 142 W.Va. 522, 96 S.E.2d 913 (1957); Syllabus Point 3, *State v. Gargiliana*, 138 W.Va. 376, 76 S.E.2d 265 (1953); Syllabus Point 2, *State v. Evans*, 136 W.Va. 1, 66 S.E.2d 545 (1951); Syllabus Point 4, *State v. Lewis*, 133 W.Va. 584, 57 S.E.2d 513 (1949).

Clearly, in the present case the testimony of the defendant's niece as to sexual abuse incidents which occurred twenty years before the trial involved incidents which were too remote and constituted reversible error.

It is appropriate to comment on two other of the defendant's assignments of error. The first is that the trial court committed reversible error when it permitted Phyllis Jean Hawthorne, the expert witness, to testify, in narrative form, on the subject of sexual abuse in the community and on her assessment of the validity of the evidence of the children in this case.

▪ In *State v. Armstrong*, 179 W.Va. 435, 369 S.E.2d 870 (1988), decided after the defendant's trial, this Court recognized that a trial court is vested with sound discretion to permit an expert witness to testify in narrative form rather than through question and answer. Syllabus point 3 stated: "The trial court is vested with sound discretion to permit a witness to testify in narrative form, rather than by question and answer." Additionally, the

---

**1.** In *State v. Banjoman,* 178 W.Va. 311, 359 S.E.2d 331 (1987), the Court discussed at some length the limitations surrounding cross-examination as to relevance, remoteness, and advance disclosure at an *in camera* hearing.

**2.** The State makes no claim that the testimony was offered as a collateral crime under Rule 404(b). Even if it did, the remoteness problem would still be present.

Court recognized that when a witness at trial has the requisite skill and experience, the trial court may properly admit expert opinion testimony to aid the jury in understanding the evidence. The Court noted, however, that an expert is precluded from expressing an opinion as to an ultimate question in a case.

■ This admissibility of expert opinion was more extensively discussed in *State v. McCoy*, 179 W.Va. 223, 366 S.E.2d 731 (1988), where the Court recognized that a trial court may permit a qualified expert witness to give opinion testimony to aid the jury in understanding the evidence relating to rape trauma syndrome. The Court noted, however, that an expert is precluded from expressing an opinion as to an ultimate question in a case. The Court stated in syllabus point 2:

> Qualified expert testimony regarding rape trauma syndrome is relevant and admissible in a prosecution for rape where the defense is consent. The expert may testify that the alleged victim exhibits behavior consistent with rape trauma syndrome, but the expert may not give an opinion, expressly or implicitly, as to whether or not the alleged victim was raped.

In reaching this conclusion, the Court indicated that while expert testimony is of value in understanding other evidence in a case, it cannot be used as the basis for the jury's verdict. The Court stated that:

> The danger involved in permitting an expert to conclude that because a complainant suffers from rape trauma syndrome, the complainant was, therefore, raped is that "[such a] conclusion vouches too much for the victim's credibility and supplies verisimilitude for her on the critical issue of whether defendant did rape her." *[State v.] Taylor*, 663 S.W.2d 235, 240 (Mo.1984). There is the danger that the jury will place too much emphasis on the testimony of the witness because of his or her status as an expert:
>
> > [p]ermitting a person in the role of an expert to suggest that because the complainant exhibits some of the symptoms of rape trauma syndrome,

the complainant was therefore raped unfairly prejudices the appellant by creating an aura of special reliability and trustworthiness.

*[State v.] Saldana*, 324 N.W.2d 227, 231 (Minn.1982).

*State v. McCoy*, 179 W.Va. at 228, 366 S.E.2d at 736 (footnote omitted).

■ In the present case the defense of consent was not presented. However, the Court believes that the rationale behind the *McCoy* decision is broad enough for the Court to conclude that qualified expert testimony regarding rape trauma syndrome is admissible in a rape prosecution to explain the State's direct evidence in its case in chief. Before such evidence is introduced, the expert must be properly qualified. The jury should be admonished and instructed that the evidence is for the purpose of explaining the other evidence in the case and cannot serve as the ultimate basis of the jury's verdict. Additionally, the court must not permit the expert to give an opinion, explicitly or implicitly, as to whether the alleged victim was raped.

Upon any retrial of the defendant in the present case, the trial court should take precautions to insure that any rape trauma expert's testimony conforms to these guidelines.

■ Another error claimed by the defendant is that the trial court erred in permitting the State to elicit information concerning his application for a foster child to be placed in his home. The evidence was adduced while the State was cross-examining the defendant. The prosecuting attorney asked the defendant whether he had ever made an application for a foster child to be placed in his home sometime prior to the incidents giving rise to the charges against the defendant. Defense counsel objected, but the objection was overruled. The prosecuting attorney then proceeded with his inquiry, suggesting that the defendant had stated a preference for a "little girl" in his application to be a foster parent. In reflecting upon this evidence, the Court fails to see how it is relevant to the allegations against the defendant.

For the foregoing reasons, the defendant's conviction is reversed, and this case is remanded for a new trial.

Justice McGraw participated and concurred in this decision but departed from the Court prior to the preparation of the opinion. Justice Workman did not participate in the consideration or decision of this case.

Reversed and remanded.

McGRAW, J., participated and concurred in this decision but departed from the court prior to the preparation of the opinion.

WORKMAN, J., did not participate in the consideration or decision of this case.