436 S.E.2d 308

**STATE of West Virginia, Appellee,**

v.

**Lisa A. NELSON, Appellant.**

**No. 21568.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 15, 1993.

Decided Oct. 14, 1993.

Dissenting Opinion of Chief Justice Workman Oct. 15, 1993.

Darrell v. McGraw, Jr., Atty. Gen., Stephen R. Van Camp, Asst. Atty. Gen., Charleston, for appellee.

George B. Morrone, III, Kenova, for appellant.

NEELY, Justice.

In 1987 Lisa A. Nelson was a clerk in the Cabell County Sheriff's Office and lived in Huntington with Charlie McComas, the director of security at the Huntington Civic Center. In late summer of that year, Ms. Nelson and Mr. McComas helped Ms. Nelson's lifelong friend Sharon Ison obtain a job at the Huntington Civic Center. Because the job required residence in Huntington, Ms. Ison, at the suggestion of Mr. McComas, falsely used the Huntington address of Mr. McComas' elderly aunt on her employment application while continuing to live in Wayne County.

In early 1988, Ms. Nelson alerted Ms. Ison to a job opening as poll worker in Cabell County. The job required that Ms. Ison be registered to vote in Cabell County; Ms. Ison was registered in Wayne County. In February 1988 Ms. Nelson called Ms. Ison to obtain information for the purpose of filling out Ms. Ison's voter registration card. The Cabell County voter registration card bearing Ms. Ison's name contains the false Huntington address. Ms. Ison did not fill out, sign or offer the registration card to the county clerk.

In fall 1990, following an anonymous letter to the Cabell County Sheriff's Office concerning irregularities in the signature of Sharon Ison on voting records, Corporal Robert Adkins asked Ms. Ison whether she lived at the Huntington address. Ms. Ison eventually admitted that she did not live there.

Ms. Nelson was indicted by a special grand jury for the felonies of forgery, uttering and perjury for offering Ms. Ison's voting registration card. Because the handwriting expert for the state lacked sufficient evidence to conclude that the signature on the questioned form was that of Ms. Nelson, the court, on the state's motion, dismissed the forgery and uttering counts at the beginning of trial. Ms. Nelson was convicted for offering the fraudulent voter registration card in violation of W.Va.Code, 3–2–42 [1990]. W.Va.Code 3–2–42 [1990] provides in pertinent part:

A person who knowingly offers any application for registration or transfer of registration when the applicant therein is not qualified to register or transfer his registration ... shall be guilty of a felony ...

■ The dispositive issue in this case is whether the state's evidence was sufficient to show that Ms. Nelson offered the questioned voter's form for registration at the Cabell

County Clerk's Office. We stated the rule for appellate review of a guilty verdict in Syllabus Point 1 of *State v. Starkey,* 161 W.Va. 517, 244 S.E.2d 219 (1978):

> In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate that consequent injustice has been done.

■ This case is based entirely on circumstantial evidence. Where circumstantial evidence is relied on, it must be scanned with caution. *State v. Phillips,* 176 W.Va. 244, 245–246, 342 S.E.2d 210, 212 (1986). In Syllabus Point 2 of *State v. Dobbs,* 163 W.Va. 630, 259 S.E.2d 829 (1979), we stated:

> Circumstantial evidence will not support a guilty verdict, unless the fact of guilt is proved to the exclusion of every reasonable hypothesis of innocence; and circumstances which create only a suspicion of guilt but do not prove the actual commission of the crime charged are not sufficient to sustain a conviction.

For the sake of clarity, we summarize the circumstances on which the State relies to connect Ms. Nelson with the crime.

■ The prosecution's handwriting expert, K.H. McDowell, testified that he determines whether a particular writing was prepared by the person in question on a four-level rating system: reasonably certain; probable; possible; and cannot be eliminated. Mr. McDowell ascertained that the signature on the questioned form probably was not that of Ms. Ison. He found in addition that it was reasonably certain that Ms. Nelson prepared the hand-printed areas on the form. However, he concluded it merely possible—not probable or certain—that Ms. Nelson signed the document. For this reason, the court, on the state's motion, dismissed the forgery and uttering counts at the beginning of trial.

Ms. Ison, whose registration card was at issue, testified that Ms. Nelson called her in early February for assistance in preparing Ms. Ison's voting form and that she herself neither filled out any information nor signed nor offered the card for registration. Ms. Ison presented no evidence on the issue of whether Ms. Nelson either signed or offered the questioned form.

In short, the State established only that Ms. Nelson probably prepared the form for Ms. Ison, which, it should be noted, is a perfectly legal act. It is standard practice for clerks in offices to fill out routine forms for clients, either for the sake of efficiency or, as is increasingly common, when dealing with people of marginal literacy. Thus, no logical inference can be made from the fact that Ms. Nelson filled out Ms. Ison's form.

The state failed to prove that Ms. Nelson signed the form; in fact, so paltry was the evidence indicating that Ms. Nelson's signature appeared on the form that the court, on the state's motion, dismissed the forgery and uttering counts at the beginning of trial. Moreover, the Sheriff's Deputy Greg Cook, who notarized the questioned form bearing the signature of "Sharon G. Ison" maintained that Ms. Nelson could not possibly have signed the name of Ms. Ison in his presence as he knew Ms. Nelson at the time the document was notarized. Finally, none of the State's witnesses could furnish any evidence to show it was Ms. Nelson who offered the questioned Voter's Form.

In sum, the leap of logic we are asked to make—that because Ms. Nelson probably filled out the form for Ms. Ison and although she cannot be proven to have signed it she nonetheless offered it for registration—is too vast; too many reasonable hypotheses of innocence can be formed to allow us to sustain this conviction.

For the foregoing reasons, we reverse for evidentiary insufficiency.

Reversed.

WORKMAN, Chief Justice, dissenting:

(Filed Oct. 15, 1993)

I must dissent. The majority obviously felt sympathy for the Appellant, who does indeed strike the profile of a person whose chief character flaw seems to be the desire to "help" her friends.[1] However, judicial compassion must be tempered[2] not only by the goal of consistency and even-handedness, but also with some concern for the seriousness of the crime of voting fraud.[3]

The unrefuted evidence was that the Appellant, in an effort to help a close friend, Ms. Sharon Ison, obtain a position as poll worker, contacted her in Wayne County, West Virginia, and suggested that she misrepresent her residency in order to register to vote in Cabell County.[4] The evidence further reflected that the Appellant completed the registration form with information she knew to be false, that the voter registration was filed in the County Clerk's Office, and that Ms. Ison did serve as a Cabell County poll worker.

Ms. Ison testified that she gave the Appellant all the information by phone, but had no further involvement in completing or filing the application. In addition, a handwriting expert, Trooper K. H. McDowell, testified that he examined the handwriting on the registration card and was able to conclude that the Appellant filled out the hand-printed areas of the card based on the Appellant's handwriting samples. Trooper McDowell testified that Ms. Ison probably did not sign the registration card and the trooper could only conclude that the Appellant may have signed Ms. Ison's name to the card.

On February 3, 1988, a voter registration card bearing Ms. Ison's name and purportedly signed by Ms. Ison was offered for registration at the County Clerk's Office in Cabell County. The card had been notarized by Deputy Greg Cook of Cabell County Sheriff's Office. Deputy Cook testified that he normally would not notarize a card without the presence of the person who signed the document, but acknowledged that he sometimes notarized documents for persons he knew without the presence of the actual signer. The deputy had no recollection of this particular voters registration card. The evidence revealed that Deputy Cook worked with the Appellant.

In the fall of 1990, following the receipt of an anonymous letter to the Cabell County Sheriff's Office concerning irregularities in the signature of Sharon Ison on voting records, Corporal Robert Adkins asked Ms. Ison whether she lived in Huntington at the address given on the voters registration card. Ms. Ison apparently did not immediately re-

1. In *State v. Nelson*, 189 W.Va. 778, 434 S.E.2d 697 (1993) this same Defendant, while working for the Huntington Police Department, tried to help a friend by withholding information regarding the friend's criminal record from a prospective employer who presented Nelson with an authorization for the release of the friend's criminal record. That favor resulted in a criminal conviction, which this Court upheld.

2. It should be noted that although the Appellant was given a sentence of one-year in the county jail, the sentence was suspended and she was placed on supervised probation.

3. West Virginia Code § 3–2–42 (1990) provides, in pertinent part:

(a) A person who willfully provides false information concerning a material matter or thing in a uniform statewide application for registration, reregistration or change of registration, under oath or affirmation lawfully administered, shall be deemed guilty of perjury; one who induces or procures another person to do so shall be deemed guilty of subordination of perjury.

(b) A person who knowingly offers any application for registration, reregistration or transfer of registration when the applicant therein is not qualified to register or transfer his registration, or any person who knowingly administers an oath or affirmation to an applicant for registration, reregistration or change of registration when the application contains false information concerning a material or thing, or any person who falsely represents that an oath or affirmation was executed by an applicant for registration, reregistration or change of registration, shall be guilty of a felony. . . .

4. Appellant explained to Ms. Ison that in order to serve as a poll clerk, one must be registered to vote in the county where she would serve. In addition, the Appellant had previously counselled with and advised Ms. Ison on falsifying her residency in order to obtain municipal employment at the Huntington Civic Center.

spond. After the corporal's inquiry, the Appellant advised Ms. Ison to tell police that she lived at the Huntington address.

Ms. Ison apparently did not listen to the Appellant's advice and told police that she did not live in Huntington. Subsequently, the Appellant angrily telephoned Ms. Ison and told her that she had done Ms. Ison a favor and that Ms. Ison was not a very good friend because she would not say that she lived in Huntington.

Under these circumstances, it is rather fantastical for the majority to conclude that no logical inference can be drawn from the Appellant filling out Ms. Ison's form. It took no leap of logic for the jury to conclude that the Appellant generated the idea for the fraudulent voter registration, filled out the voter registration application and saw to it that it was filed.

It is the law of West Virginia that a general indictment as a principal in the first degree shall be sufficient to sustain a conviction as an aider and abettor or as an accessory before the fact. The circuit court so instructed the jury without objection.

Consequently, it was unnecessary for the state to prove that the Appellant actually signed Ms. Ison's name to the voter registration application. Even if such proof was needed, there was overwhelming circumstantial evidence upon which the jury could have concluded that the Appellant did sign the form.

The majority has upheld far more serious criminal convictions than this on the basis of far less circumstantial evidence. In this case, however, it appears that fraudulent voter registration has been treated far too lightly by the majority.